IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PENN NATIONAL INSURANCE, *a/s/o Elam. G. Stoltzfus, Jr., Inc.*, Plaintiff, | : | No. 1:05-cv-2096 |
| | : | (Judge John E. Jones III) |
| v. | : | |
| HNI CORPORATION and HEARTH & HOME TECHNOLOGIES, INC., *t/d/b/a Fireside Hearth & Home*, Defendants. | : | |

---

| | | |
|---|---|---|
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA *a/s/o Doneckers, Inc.*, Plaintiff, | : | No. 4:06-cv-0747 |
| | : | (Judge John E. Jones III) |
| v. | : | CONSOLIDATED |
| HEARTH & HOME TECHNOLOGIES, INC., *t/d/b/a Fireside Hearth & Home*, Defendants. | : | |

---

AND RELATED THIRD PARTY COMPLAINTS

# MEMORANDUM

**October 3, 2007**

Pursuant to Federal Rule of Civil Procedure 52(a), this memorandum sets forth the Court's findings of fact and conclusions of law regarding the amount that Plaintiff Penn National Insurance Company ("Penn National"), as subrogee of Elam G. Stoltzfus, Inc., may recover as damages in this action. After considering the evidence presented at the bench trial on this issue and the post-trial submissions of the parties, the Court holds that Penn National's damages are $558,372.70.

## I. PROCEDURAL HISTORY

This action arises out of a fire in a model home built and owned by Elam G. Stoltzfus, Jr., Inc. Penn National was Stoltzfus's insurer. Penn National, as subrogree of Stoltzfus, brought negligence and breach of contract claims against Defendant Hearth & Home, alleging that Hearth & Home's improper installation and assembly of a fireplace caused the fire. (*See* Doc. 1.)

Hearth & Home counterclaimed, alleging that it subcontracted with Defendant Howard Haldeman to install the fireplace, that Haldeman was required to indemnify Hearth & Home, and that Haldeman's insurer (which is also Penn National) must provide Hearth & Home coverage for claims arising out of the

model home. (Doc. 9.) Hearth & Home also filed a third party complaint and counterclaims against Haldeman for contribution, indemnification, and breach of contract. (Doc. 10.)

On April 20, 2007, Penn National's breach of contract claims against Hearth & Home and Hearth & Home's counterclaims were resolved by summary judgment in Penn National's favor. (*See* Doc. 137.) Because Hearth & Home raised material factual issues as to the amount of damages, however, judgment as to Penn National's damages was reserved until after trial. (*Id.* at 16.)

At an August 1, 2007 pre-trial conference, the parties stipulated to have the damages determined by a non-jury trial. (*See* Doc. 175.) The Court conducted a bench trial on the damages issues over two days. Penn National presented two witnesses: Frank Royer, the claims adjuster who handled Stoltzfus's claim that resulted from the fire, and Larry Sheckler, the project manager for Stoltzfus who oversaw construction of the house. Hearth & Home did not present any witnesses.[1] The Court permitted both parties to file post-trial submissions. (*See* Docs. 206, 208.)

---

[1] Defendant Haldeman did not participate in the bench trial on damages, having stipulated to the amount of damages at issue. Plaintiff Travelers Property Casualty Company of America, as subrogree of Doneckers, Inc., the company that provided furniture for the model home, participated in the bench trial, but subsequently settled with both defendants. (*See* Doc. 212.) Travelers' damages are therefore no longer at issue and will not be addressed here.

## II. FINDINGS OF FACT

Upon review of the testimony and evidence presented at the trial of the damages issue and the parties' post-trial submissions, the Court makes the following findings of fact:

1. Elam G. Stoltzfus, Jr., Inc. built and owned a house on lot number 34 in the Pinehurst Hills development in Mechanicsburg, Pennsylvania with the street address of 1735 Eliza Way. (Trial Transcript Vol. 2 ["Tr."] 17-18, 76.)

2. The house was located in an upscale neighborhood, consisted of approximately 3,600 square feet over two stories, and included a first floor master bedroom suite, three and a half baths, and attached three-car garage. (Tr. 76-77; Ex. PN13.)

3. Construction of the house was completed on September 15, 2004. (Tr. 80.)

4. The house was intended to be a model home and part of the "Parade of Homes" to showcase the houses Stoltzfus builds. (Tr. 80-81; Ex. PN13.)

5. The house had a list price of $799,900, and Stolztfus was not willing to sell the house for less than list price. (Tr. 81, 90-91; Ex. PN13.)

6. Two parties expressed interest in purchasing the house, but the house was not sold. (Tr. 90-91.)

7. On October 1, 2004, a fire occurred in the house at 1735 Eliza Way. (Tr. 6, 15, 17-18.)

8. The fire resulted in the substantial destruction of the. (Tr. 22-23, 24, 26-28, 82-85; Ex. PN1-PN8.)

9. The fire resulted in substantial damage to the interior of the house, including smoke and water damage. (Tr. 23, 28-29, 56, 60-61, 82-85; Ex. PN9-PN12.)

10. After the fire, no part of the structure of the house, no fixtures, and no appliances were reusable or salvageable, and, in fact, no part of the structure of the house, no fixtures, and no appliances were reused or salvaged. (Tr. 50, 53, 56, 60-61, 70, 82-85.)

11. Penn National Insurance Company issued a policy of insurance to Stoltzfus which covered the 1735 Eliza Way house. (Tr. 16-18; Ex. PN22.)

12. Stoltzfus submitted a claim under the policy issued by Penn National for the loss caused by the fire. (Tr. 15, 37.)

13. Pursuant to the policy it issued to Stoltzfus, Penn National paid Stoltzfus $558,372.70 for the loss caused by the fire. (Tr. 51; Ex. PN16-PN21.)

14. In determining the amount to pay Stoltzfus, Penn National did not take depreciation into account because the house was only two weeks old. (Tr. 44, 52, 69.)

15. After the fire, Stoltzfus rebuilt essentially the same house at 1735 Eliza Way. (Tr. 84.)

16. The second house built by Stoltzfus at 1735 Eliza Way sold for $775,000. (Tr. 90.)

## III. DISCUSSION

In this case, Penn National seeks damages as a subrogee of its insured, Stoltzfus. Having compensated Stoltzfus for injury caused by another, Penn National "is granted the right to stand in the shoes of [Stoltzfus] and assert [Stoltzfus'] rights against the tortfeasor." *Universal Underwriters Ins. Co. v. A. Richard Kacin, Inc.*, 916 A.2d 686, 692 (Pa. Super. Ct. 2007.) "[A] subrogee has no greater rights than those held by the subrogor," *Chow ex rel. Chow v. Rosen*, 812 A.2d 587, 590 (Pa. 2002), and therefore Penn National's damages are limited to the damages that Stoltzfus could recover. Further, "the subrogee is limited to

recovering in subrogation the amount received by the subrogor relative to the claim paid by the subrogee." *Chow*, 812 A.2d at 590; *see also Allstate Ins. Co. v. Clarke*, 527 A.2d 1021, 1023 (Pa. Super. Ct. 1987) (stating "equity will not allow the subrogee's claim to be placed ahead of the subrogor's"). Thus, Penn National's damages are limited to the amount it paid Stoltzfus.

The Pennsylvania Supreme Court has recently reiterated the method for calculating damages for harm caused to real property:

> In Pennsylvania, the general measure of damages for permanent harm to real property is the diminution in market value attributable to the conduct, product, or instrumentality giving rise to liability, and in situations in which the harm is reparable, damages are assessed according to the lesser of the cost of repair or the market value of the affected property.

*Pa. Dept. of Gen. Serv. v. U.S. Mineral Prod. Co.*, 898 A.2d 590, 596 (Pa. 2006); *see also Wade v. S. J. Groves & Sons Co.*, 424 A.2d 902, 911 (Pa. Super. Ct. 1981) ("It is well-settled law in this Commonwealth that the measure of damages for injury to property is the cost of repairs where that injury is reparable; however, where the injury is characterized as permanent, the measure of damages becomes the decrease in the fair market value of the property."). In this case, it is beyond peradventure that the damage caused by the disastrous fire at 1735 Eliza Way was permanent and irreparable. Therefore, the proper measure of damages is decrease

in the fair market value of the property caused by the fire.

Calculation of the decrease in fair market value takes into account depreciation. *U.S. Mineral Prod.*, 898 A.2d at 598. This does not mean, however, as Hearth & Home argues, that Penn National's damages are limited to the "actual value" of the house. Pennsylvania law is clear that the proper measure of damages is the decrease in market value caused by the fire, and the Pennsylvania Supreme Court has clearly distinguished between market value and actual case value:

> Generally speaking, 'actual cash value' does not mean market value, as the term is understood. 'Market value'... embodies what a purchaser willing to buy feels justified in paying for property which one is willing but not required to sell. 'Market value' includes factors of time, place, circumstance, use, and benefit; depreciation is included, but one figure is the result of these considerations, the price to be paid. Ordinarily actual cash value has no relation to any of these factors; it is value under all times, such as the cost of manufacturing or building or book value. [Market value] includes 'depreciation,' while the 'actual cash value' ... is to be diminished by 'depreciation.' Actual cash value ... means what it would cost to replace a building or a chattel as of the date of the fire.

*Fedas v. Ins. Co. of State of Pa.*, 151 A. 285, 288 (Pa. 1930). Thus, while market value takes depreciation into account, it does so in determining the price that willing buyers and sellers would assign to the property.

Applying the aforementioned principles to the case *sub judice*, the Court finds that the market value of the house at 1735 Eliza Way is between $775,000 and $799,900, based on the firm list price for the first house of $799,900 and the sale of the second, essentially identical, house for $775,000. There is no depreciation to take into account in this case because the house was only two weeks old at the time of the fire and had never been occupied. The fire caused a total loss of the property, such that any reuse or salvage was not possible. Therefore, the decrease in market value caused by the fire was at least $775,000, and this is the proper measure of damages. Penn National's damages, however, are limited to what it, as subrogee, paid its subrogor Stoltzfus: $558,372.70. *Chow*, 812 A.2d at 590; *Clarke*, 527 A.2d at 1023.

Hearth & Home argues that Penn National has not put forth sufficient evidence of damages, but this argument is entirely unavailing. As an initial matter, "an injured plaintiff should not be deprived of fair recompense merely because there is some degree of uncertainty associated with the calculation of damages." *U.S. Mineral Prod.*, 898 A.2d at 597. Hearth & Home has stipulated that Stoltzfus owned the 1735 Eliza Way property, that Penn National insured the property, and that the property was substantially destroyed by fire on October 1, 2004. (Tr. 6, 17-18.) Penn National presented two witnesses and numerous

exhibits testifying to the cost of building the first house at 1735 Eliza Way, the list price of that house, the estimated costs of building a second house at 1735 Eliza Way, the actual costs of building the second house, and the list and sales prices of the second house. This evidence is more than sufficient to meet Penn National's burden of proving damages, by a preponderance of the evidence, to a reasonable degree of certainty. *See, e.g.*, *Scullion v. EMECO Industries, Inc.*, 580 A.2d 1356, 1360 (Pa. Super. Ct. 1990) ("Although the plaintiff bears the burden of proving damages by a preponderance of the evidence, he is required only to provide the jury with a reasonable amount of information so as to enable the jury fairly to estimate damages without engaging in speculation. Damages need not be proved with mathematical certainty."); *Pikunse v. Kopchinski*, 631 A.2d 1049, 1052 (Pa. Super. Ct. 1993) ("Where the amount of damage can be fairly estimated from the evidence, recovery will be sustained even though such amount cannot be determined with entire accuracy. It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss.").

Penn National's evidence is more than sufficient to provide the Court with a reasonable basis from which to calculate damages. If Hearth & Home wished to argue for a reduction in damages, the burden was on it to rebut the adequacy of Penn National's evidence or present evidence of its own. *See Moyer v. White*

48 Pa. D. & C.3d 487, 503 (Pa. Ct. Com. Pl. 1988) ("Although there are no Pennsylvania cases on this point, common sense would dictate that it is defendant's burden to challenge plaintiff's damages."); *Watsontown Brick Co. v. Hercules Powder Co.*, 265 F. Supp. 268, 275 (M.D. Pa. 1967). ("[W]here plaintiff also introduces evidence of the cost of repairs to the property the burden shifts to defendant to establish matters asserted by him in mitigation or reduction of the amount of damages."). Hearth & Home presented absolutely no witnesses at trial, and presented only six photographs as evidence, which merely confirmed the extent of the damage caused by the fire.[2] (*See* Ex. H&H1-6; Tr. 56, 58.) Hearth & Home has not given the Court a basis to question the reasonableness or accuracy of Penn National's damages claim, and therefore, judgment on the damages issue shall be entered for Penn National.

## IV. CONCLUSION

For the foregoing reasons, the Court holds that Penn National's damages in this case are $558,372.70. An appropriate order shall issue.

---

[2] In fact, given the paucity of evidence presented by Hearth & Home, the Court is left to wonder why this exercise, which had all the allure of sitting through a discovery deposition, was necessary at all.